IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT AURELIUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 7502 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| JONES, LANG, LASALLE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Robert Aurelius has sued Jones, Lang, LaSalle, Inc. ("Jones Lang") for breach of contract for its alleged failure to give him severance pay. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss. For the reasons set forth below, the motion is granted.

### Facts

On February 25, 2002, Jones Lang entered into an agreement with Motorola to manage several of Motorola's buildings in Illinois. (Compl. ¶ 6; Def.'s Mem. Supp. Mot. Dismiss, Ex. 1, Employee Matters Agreement at 1.)[1] Pursuant to that agreement, plaintiff and a number of other Motorola employees became employees of Jones Lang. (Compl. ¶¶ 7-9.) The agreement required Jones Lang to pay the former Motorola employees who were terminated "other than for Cause within five (5)

---

[1] The Court may take judicial notice of the Jones Lang Severance Plan, which Jones Lang attached to its motion to dismiss, because plaintiff refers to it in the complaint and it is central to his claim. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

years of the [date they became Jones Lang employees] . . . a severance benefit . . . substantially comparable to the benefit provided under the Motorola Severance Plan." (Def.'s Mem. Supp. Mot. Dismiss, Ex. 1, Employee Matters Agreement § 2.3.)

Jones Lang expressly incorporated Motorola's severance plan into the Jones Lang LaSalle Severance Pay Plan ("JL Plan") by amending it to include the following language:

> Notwithstanding any provision of this Plan to the contrary, if any Former Motorola Employee is terminated other than for Cause within five years of the Transfer Date such Former Motorola Employee will be entitled to the greater of: (i) the benefits available under this Plan; or (ii) the benefits described in the Motorola Severance Plan then in effect (but not to exceed the benefits levels in effect under the Motorola Severance Plan as of the Transfer Date).

(Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, JL Plan, Ex. A § 3.10.)

One year after Jones Lang hired plaintiff, it fired him, allegedly for poor performance. (Compl. ¶ 10.) Plaintiff contends that Jones Lang breached its contract with plaintiff by terminating him without paying him the severance benefits to which he was entitled. (*Id.* ¶ 21.)

## Discussion[2]

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

---

[2]Though he was provided ample time to do so, plaintiff did not file a response to Jones Lang's motion. Thus, our discussion is confined to Jones Lang's contentions.

Jones Lang contends that plaintiff's state-law breach of contract claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. ERISA vests the federal district courts with exclusive jurisdiction over actions arising under the employee benefit plans it governs. 29 U.S.C. § 1132(e). Moreover, ERISA preempts any state-law claim that "relate[s] to" any such employee benefit plan. 29 U.S.C. § 1144(a). A state-law claim relates to an ERISA plan if it "requires the court to interpret or apply [its] terms." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998). Plaintiff's breach of contract claim requires the Court to interpret the JL Plan to determine whether he was, in fact, entitled to severance benefits. Thus, if the JL Plan is an ERISA plan, plaintiff's contract claim is preempted.

ERISA defines an employee benefit plan as, among other things, "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . any benefit described in § 186(c) of this title." 29 U.S.C. § 1002(1)(b). Severance benefits are among those described in section 186(c). 29 U.S.C. § 186(c).

The contours of that broad statutory definition have been fleshed out by the courts. The Supreme Court identified one of the characteristics of an ERISA plan in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). In that case, an employer that closed its Maine plant challenged on ERISA preemption grounds a Maine statute that required it to make a one-time severance payment to the plant employees. *Id.* at 4-6. The Supreme Court held that the state law was not preempted because it did not relate to an employee benefit plan within the meaning of ERISA. *Id.* at 6. Such a plan, the Court said, "requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11. In the Court's view, the Maine statute did not require employers to create such a program:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces

3

> no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. . . . To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.

*Id.* at 12. Because "[t]he theoretical possibility of a one-time obligation in the future creates no need for an ongoing administrative program for processing claims and paying benefits," the Court held that ERISA did not apply. *Id.*

The Seventh Circuit echoed that reasoning in *Collins*. The plan in *Collins* provided that certain company managers would receive benefits if their responsibilities were substantially reduced or they were transferred after the company was acquired. 147 F.3d at 594. The court held that the plan constituted an ongoing administrative program and, as a result, was governed by ERISA. *Id.* at 569. Unlike payment upon a plant's closing, the employer in *Collins* "could not satisfy its obligation by cutting a single check and making a single payment to all of its managers at once." *Id.* at 595 (citation omitted). Instead, the employer could be obligated to make payments in varying amounts at various times to some, but not all, of its managers, and would have to budget for the payment of benefits under the plan. *Id.* at 596-97.

Varying and periodic payments are not the only indications of an ongoing administrative program. Such a program also requires the exercise of "managerial discretion." *Cvelbar v. CBI IL Inc.*, 106 F.3d 1368, 1377 (7th Cir. 1997), *abrogated on other grounds*, 161 F.3d 427, 430 (7th Cir. 1998). The plan in *Cvelbar* is illustrative. Under that plan, an employee was eligible for benefits only if "he was terminated, voluntarily or involuntarily, for any reason other than death, retirement, or the commission of a felony or fraud" and did not work for a competitor within three years of his termination. *Id.* at 1370. Moreover, benefit payments under the plan, which were tied to whatever

4

group medical and retirement plans the employer had in effect at the time of the termination, required an analysis of individual circumstances rather than "simple arithmetical computations." *Id.* at 1371, 1377. Because the plan required the employer to exercise its judgment to determine both an employee's eligibility for benefits and the amount of benefits he would receive, the Seventh Circuit said that it constitute an ongoing administrative program. *Id.* at 1378; *see Collins*, 147 F.3d at 597 (severance plan was covered by ERISA because it required the employer "to exercise discretion on an ongoing basis").

The JL Plan contains all of the hallmarks of the "ongoing administrative program" discussed in *Fort Halifax, Collins* and *Cvelbar*. The JL Plan calls for a series of payments over a two-year period, rather than one, lump-sum payment. (Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, JL Plan § 4.2) (stating that "benefits shall be paid in equal installments according to the Employer's normal payroll schedule; provided that all benefit payments to a participant must be completed within 24 months following the date on which the participant's employment terminates").) The JL plan also creates the possibility of "multiple payments to various [employees], at different times and under different circumstances," *Collins*, 147 F.3d at 595, by hinging eligibility on a variety of circumstances and events. (*See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, JL Plan §§ 2.1 & 2.2 (stating that the Plan does not apply to, among others, employees covered by a collective bargaining agreement, employees who perform most of their work outside of the United States or those who, among other things, voluntarily leave Jones Lang, are terminated for poor performance or are entitled to workers' compensation).) Moreover, the JL Plan requires the plan administrator to exercise discretion to determine whether an employee is eligible for benefits and, if so, how much he is entitled to receive. (*See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, JL Plan § 2.2 (stating that employees are ineligible for severance if, among other things, they are terminated for dishonesty or gross negligence, they are terminated for refusing

5

to accept another position with Jones Lang that is "reasonably comparable in responsibility and salary" or they abandon their jobs); *id.* §§ 3.1-3.9 (stating that amount of severance is determined by an employee's years of continuous service, whether he has met the conditions of enhanced severance and whether any set-offs are due Jones Lang).) Finally, the JL Plan creates "the need for financial coordination and control," *Fort Halifax,* 482 U.S. at 12, because Jones Lang must budget to make the various payments that the terms of the Plan require. For all of these reasons, the JL Plan satisfies the "ongoing administrative program" element of an ERISA-governed plan.

The second characteristic of an ERISA-governed plan is that its terms are so clear that "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Diak v. Dwyer, Costello & Knox, P.C.,* 33 F.3d 809, 812 (7th Cir. 1994) (citation omitted). In *Diak,* the court held that an employer who paid benefits to a select number of its employees under *ad hoc* arrangements with each individual had not established an ERISA plan. *Id.* at 812-13. The "plan" in that case provided benefits to only four of the twenty-five retired employees, gave each of them a different benefit package and had no apparent procedure for paying those benefits. *Id.* at 811-12. Because there was no identifiable formula for determining the amount of benefits paid to recipients, no intended class of beneficiaries and no identifiable method of applying for or paying benefits, the *Diak* court held that the arrangement was not subject to ERISA. *Id.* at 812-13.

Unlike the plan in *Diak,* the JL Plan has clearly ascertainable terms. The JL Plan explicitly describes the available benefits and how the benefit amount is calculated. (Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, JL Plan §§ 3.1-3.9.) It also explains who is entitled to receive benefits and the circumstances that render an employee ineligible for them. (*Id.* §§ 2.1-2.2.) In addition, the JL Plan discloses the source of financing for the benefits and the procedure Jones Lang follows to pay them.

(*Id.* §§ 4.2, 5.) Because a reasonable person could easily ascertain its terms, the JL Plan meets the second requirement of an ERISA plan. *See Diak*, 33 F.3d at 812.

In sum, we hold that the JL Plan is an ERISA plan. Consequently, plaintiff's contract claim, which relates to the JL Plan, is preempted by ERISA. *Collins*, 147 F.3d at 595.

To the extent plaintiff has any claim against Jones Lang, it is one for benefits pursuant to section 1132 of ERISA. Before filing a section 1132 claim, plaintiff must "exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co.*, 295 F.3d 677, 679 (7th Cir. 2002). The JL Plan provides a procedure for administratively appealing adverse decisions on severance benefits. (*See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 3, Summ. Plan Description JL Plan at 8.) Plaintiff does not allege that he exhausted those procedures. Consequently, his section 1132 claim for benefits must be dismissed. *See id.* at 680 (affirming Rule 12(b)(6) dismissal of section 1132 suit for failure to exhaust).

## Conclusion

For all of the reasons set forth above, Jones Lang's motion to dismiss [doc. no. 2] for failure to exhaust administrative remedies is granted.

**SO ORDERED.**  **ENTERED: JUL 11 2005**

HON. RONALD A. GUZMAN
**United States District Judge**